IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>ex rel., Laura Barrickman,<br><br>Plaintiff,<br><br>vs.<br><br>THE RESTORE COMPANIES, LLC;<br>RESTORE THERAPY SERVICES,<br>LTD.; RESTORE MANAGEMENT<br>COMPANY, LLC.<br><br>Defendants. | CIVIL ACTION NO. 2:07CV 441-ID<br><br>FILED IN CAMERA<br>AND UNDER SEAL<br><br>JURY DEMAND |

## QUI TAM COMPLAINT

Laura Barrickman, Relator, by and through undersigned counsel, come before this Honorable Court on behalf of herself and the United States of America, its departments and agencies, and bring this action against Defendants; The Restore Companies, LLC, Restore Therapy Services, LTD., and Restore Management Company, LLC for money damages and civil penalties arising out of Defendant's violations of the False Claims Act, 31 U.S.C. § 3729, which violations are described hereinafter with particularity.

### JURISDICTIONAL ALLEGATIONS

1. Jurisdiction is conferred pursuant to the False Claims Act, 31 U.S.C.A. §§ 3730(b)(1) and 3732 in as much as this action seeks remedies on behalf of the United States for violations of 31 U.S.C.A. § 3729 by Defendant.

2. Relator Laura Barrickman, acting on behalf of the United States, brings

this civil action under the Qui Tam provisions of the False Claims Act, as amended in 1986.

3.  Relator Laura Barrickman is a citizen of the United States and a resident of Brewton, Alabama.

4.  Defendant The Restore Companies, LLC is a corporation organized pursuant to the laws of the State of Alabama with its principal place of business in Pelham, Alabama.

5.  Defendant Restore Therapy Services, LTD is a corporation organized pursuant to the laws of the State of Alabama with its principal place of business in Falkville, Alabama.

6.  Defendant Restore Management Company, LLC is a corporation organized pursuant to the laws of the State of Alabama with its principal place of business in Pelham, Alabama.

7.  As required under the False Claims Act, 31 U.S.C.A § 3730(b)(2), the Relator has provided the United States with a statement of all material evidence and information related to the Complaint.

8.  This action is brought on behalf of the United States to recover all damages, penalties and other remedies established by and pursuant to 31 U.S.C.A. §§ 3729-3733, and Relator Laura Barrickman claims entitlement to a portion of any recovery obtained by the United States as qui tam plaintiff authorized by 31 U.S.C.A. §3730.

9.  Venue is proper pursuant to 28 U.S.C.A §1391(a) in that Defendant is a corporation with its principal place of business in this judicial district.

## FACTS LEADING TO ALLEGATIONS

10. Defendant The Restore Companies, LLC, is headquartered at 245 Cahaba Valley Pkwy. Ste 200, Pelham, Alabama. The Restore Companies, LLC, operates as a holding company for several different divisions of Restore. With respect to its health care services, Defendant delivers residential care to skilled nursing facilities, assisted living facilities, acute and home health, and therapy to early intervention and school systems by and through its agent and/or alter ego Defendants Restore Therapy Services, LTD. and Restore Management Company, LLC.

11. Defendant Restore Therapy Services, LTD. is headquartered at Second Street, Falkville, Alabama and has facilities located throughout Alabama dedicated to providing rehabilitation programs to their clients for speech, physical, and occupation therapy.

12. Defendant Restore Management Company, LLC is headquartered at 245 Cahaba Valley Pkwy. Ste 200, Pelham, Alabama and has facilities located throughout Alabama dedicated to providing rehabilitation programs to their clients for speech, physical, and occupation therapy.

13. Relator Laura Barrickman worked for Defendants from approximately December 18, 1995 until January 10, 2007 at different locations.

14. From 1999 or 2000 until her termination, Relator has worked exclusively at Defendants Georgiana, AL location.

15. While working for Defendants at their Georgiana, AL location, Relator frequently observed improper procedures being done regarding the patients and their treatment. Relator's investigation into these matters caused her to suspect that

3

Defendants' were committing fraudulent activities.

16.  Relator has personal knowledge, via direct experience, that Defendants primarily inflated the number of procedures done and patients seen in order to obtain the maximum amount of compensation from the government (e.g. medical payments/reimbursements).

17.  During the course of her employment with Defendants at their Georgiana, AL location, Relator began to notice differences in the amount of procedures that were done and those that were actually billed for.

18.  Relator has witnessed, at the Georgiana location, therapists and therapist assistants writing down the wrong code, (essentially mis-coding) the number of procedures done on the companies notes which were used to bill Medicare for procedures done.

19.  For example, in or around September or October of 2006 at the Georgiana location, Relator witnessed therapists and therapist assistants submitting billing to be provided to Medicare for performing "therapeutic exercises" on a patient when they actually performed "therapeutic activities." Therapeutic exercises and therapeutic activities are two separate billing codes relating to different medical therapy treatment.

20.  In 2005 and/or 2006, therapist Jennifer Johnson submitted billing for Medicare reimbursement for watching patients do peg board games, saying this helped their motor skills.  Johnson would tell Relator that this would be billed under whatever treatment the patient had not already received.  For instance, if the patient had not received therapy for therapeutic exercises or therapeutic activities in the treatment time

4

frame, Johnson would bill Medicare for watching these patients under this activity on the company billing.

21.   From 2001 to 2006, Defendants therapists and therapist assistants routinely reported on company billing that they performed procedures on individual patients for longer periods of time than which actually occurred. This was done in order to get maximum compensation allowed for that procedure under Medicare by showing that the procedure fell into the "ultra high risk" category.

22.   For example, in September and October of 2006 at the Georgiana, AL location, there were patients that therapists and therapist assistants were suppose to see for 720 minutes a week who were in the "ultra high risk" category. However, the therapists and therapist assistants would not spend the full amount of time with that patient each day. Instead, the therapist's and therapist assistants would charge Medicare for the full amount of that time regardless in order to get more compensation. Medicare compensated Defendants more for procedures that fell into the "ultra high risk" category.

23.   For example, throughout 2005 and 2006 at the Georgiana, AL location, therapist Jennifer Johnson and therapy assistant Amanda Burkett billed Medicare for performing work on patients for eight to ten hours each day. However, Johnson and Burkett only worked five to six hours a day with patients. Johnson and Burkett routinely billed Medicare for working with patients for longer periods of time, on a variety of therapy procedures, than they actually spent with the patient. This was to ensure that they reached a certain level of productivity in order to receive maximum compensation from the U.S. Government.

24.   In or around 1999 or 2000, at the Georgiana, AL location, Relator was told

by her then current Director of Operation to go wait at a nearby store and clock the time at which the Speech Therapist went by, in order to see if the therapist was working the entire time that she was reporting on her billing sheet. Upon doing this, Relator discovered that the Speech Therapist was not working the amount of time that she was reporting, and was writing down she worked two hours with a patient when she only worked with them twenty minutes. Relator reported this to her Director of Operation, but nothing was every done.

25. From 2001 to 2006, Relator also observed that therapists and therapist assistants were deliberately submitting billing to be used to obtain Medicare reimbursement, that indicated more procedure's being done on a patient than actually occurred.

26. For example, in or around October of 2006 at the Georgiana location, Jennifer Johnson documented that she treated a patient for a variety of procedures [therapeutic exercise, therapeutic activities, wheelchair repulsion, ADL, self feeding] but actually did not treat the patient for all of these treatments.

27. In approximately the Fall of 2005 at the Georgiana location, Jennifer Johnson had a patient that was prescribed therapy for wheelchair positioning. Wheelchair positioning would be required when a patient only has limited mobility of their body (such as due to a stroke), and has to have items such as bolster pillows, positioning of footrest, and various cushions in order to help them use the parts of their body that are mobile. Due to her wanting to keep this patient on her case load at that time, Johnson decided to just charge the patient for "therapeutic exercise" because she did not have the ordered materials to do the wheelchair positioning therapy.

Essentially, Johnson fabricated a charge or bill for a procedure that was not done in order to keep a patient on her case load until the material arrived for the wheelchair positioning.

28.  In or around October of 2006 at the Georgiana, AL location, Jennifer Johnson documented that she treated a patient named Brooks for self-feeding for a certain amount of time over a period of days. Johnson billed her time each day for aiding this patient. However, Johnson only watched Brooks eat on one day.

29.  Relator observed therapists submitting billing for Medicare reimbursement for procedures on patients that never occurred (i.e. in essence therapist were "making up" they performed procedures and billing the government for those procedures).

30.  In or around September or October of 2006 at the Georgiana, AL location, therapist Jennifer Johnson was walking with Relator out the door and saw a patient wheeling himself past them in his wheelchair, and proclaimed "that is wheelchair repulsion, got my 30 minutes in".

31.  In or around 2003 or 2004 at the Georgiana, AL location, therapy assistant Amanda Burkett submitted billing to Medicare for conducting an ultrasound on a patient. However, Burkett never conducted the ultrasound because she said the "patient did not complain", and Burkett decided not to do the procedure but still submitted billing to Medicare for it.

32.  In or around 2005 and/or 2006 at the Georgiana location, Jennifer Johnson billed Medicare for helping a patient with "dressing". However, Johnson sat in the room with that patient watching soap operas while the patient dressed on his/her own.

33.  In or around October of 2006 at the Georgiana location, Amanda Burkett

made a statement to the Director of Operations David Barnes and Relator that "since the physical therapist had already picked the patient up that day there was nothing [she] could do, but that [she] would still bill for her time."

34. In or around September or October of 2006 at the Georgiana location, Jennifer Johnson submitted billing to Medicare for therapy for a patient she was suppose to see on a particular weekend to do her therapy. However, the Monday following that weekend, the patient confronted Johnson, in the presence of Relator, and informed Johnson and Relator that Johnson "did not come see me this past weekend and did not do any treatment".

35. In July of 2005 at the Georgiana, AL location, Amanda Burkett was assigned to help a patient do therapeutic exercise. Burkett submitted billing for Medicare reimbursement indicating she spent twenty-five minutes helping the patient with this procedure. However, Burkett allowed the patient to sit in the room for an hour, and provided not therapeutic exercise.

36. In or about September and/or October 2006 at the Georgiana location, Amanda Burkett charged a particular patient for watching him walk, when she was suppose to be assisting him walk (called "gate training"). Gate training is a therapeutic procedure, covered by Medicare, where therapist and therapist assistants aid patients in walking.

37. Relator also witnessed therapists submitting billing to Medicare for seeing more patients in a given day than actually were seen.

38. From the year 2003 to 2005 at the Georgiana, AL location, Amanda

Burkett would routinely state on company billing that she saw more patients in a day than were physically possible for her to see in the time period in which she worked that day.

39. Throughout 2005 at the Georgiana location, Jennifer Johnson would report on company billing that she saw more patients in a day than was physically possible. This is true because Johnson would not report to work until late in the morning, and thus would only be able to do 5-6 hours of work. However, the billing Johnson submitted made it appear she saw patients for 8 or more hours in a day.

40. During her employment with Defendants at their Georgiana location, Relator was privy to and had personal knowledge of Defendants' intentional violations of federal law, including, but not limited to deliberately causing the Government to be billed for more procedures done on a patient than actually occurred, putting down that procedures took more time than they actually did, writing down they saw and/or treated more patients than actually did, writing down procedures that were never performed, and writing down the wrong codes for the procedures. Upon doing these, Defendants would bill the government for these procedures.

41. Relator's job title was therapy attendant and team facilitator, which consisted of assisting the therapist's with patients and handling the billing for her center. While working in the same area as the therapist, Relator witnessed firsthand Defendants' reoccurring violation. Violations were continuous and consistent and are still ongoing.

42. Relator reported these reoccurring violations to her Director's of Operation Linda Johnson and David Barnes. Relator first reported to Linda Johnson in 2004 about Defendants' inaccurately billing practices, and Linda quickly told her "don't tell me about it."

43. Relator reported to Director of Operation David Barnes in August 2006 about Defendants' inaccurate billing practices. David Barnes made no comment to her after hearing this, and did not change any procedures or investigate into Relator's allegaions. Subsequently, in October 2006 David Barnes informed Relator that her hours were going to be cut because her position was being changed to part-time.

44. During her employment with Defendants at their Georgiana location, Relator was privy to information and had personal knowledge of Defendants' intentional, wanton and/or negligent participation in fraudulently concealing the deficiencies in the billing procedures. Defendants required Relator and others to participate in these fraudulent acts in order to obtain more money for services rendered and to inflate the companies earnings.

45. During her employment with Defendants at their Georgiana location, Relator was privy to information and had personal knowledge that Defendants, to further conceal the inaccuracies in their billing, would put down the inaccurate amount of procedures and time in order to get the maximum compensation, and in order for it to match what was billed, knowing that the number and time spent on the procedures were incorrectly reflected on the billing.

46. On numerous occasions prior, during, and subsequent to the above-mentioned acts, Defendant knowingly, intentionally and willfully withheld from the United States that Defendants' where not conducting as many procedures as they claimed to be doing and that substantial amounts of time where reported with patients that did not occur.

47. During the course of her employment at the Georgiana location, Relator

learned that Defendants knowingly condoned the fraudulent activities and statutory violations and Relator feared for her job and the safety of those persons who were relying on Defendants' care. Relator feared retaliation by Defendants if she disclosed to public officials her knowledge of the above described wrongdoing.

48. Over the course of her employment at the Georgiana location, Relator became increasingly anxious, scared, depressed, and suffered profound emotional and mental distress.

49. Defendants represented to the United States Government that their services were being performed as required by law and therefore charged the government for said services in accordance with Medicare/Medicaid billing procedures. However, services were not performed and/or not performed as required under the procedures for Medicare/Medicaid and, upon Relator's information and belief, services which were performed were coded and billed at a higher amount than what it should have been if the procedures had been billed correctly.

50. Defendants represented to the United States Government that procedures done were billed correctly. However, the majority of procedures done were routinely inflated on billing records in order to get substantially more money from Medicare reimbursement. Upon Relator's information and belief, Defendants' caused the Government to be billed for these procedures as if they were all properly performed on patients.

51. Relator Laura Barrickman is and was an "original source" of the information described above under the statute for reporting false claims against the United States within the meaning of 31 U.S.C.A. § 3729.

52. The United States has been damaged by all of the above-mentioned misrepresentations and wrongful acts.

WHEREFORE, the United States demands judgment against Defendants in accordance with the provisions of 31 U.S.C.A. §§ 3729-3733 and for any other costs the Court deems appropriate of which up to twenty-five percent should be paid to Plaintiff as Relator, and any such further relief deemed appropriate.

## COUNT I

**Violation of the False Claims Act, 31 U.S.C.A. § 3729 (2), (3), and (7)**

53. Plaintiff realleges all prior paragraphs of the Complaint as if set forth fully herein.

54. Upon information and belief, Defendants caused to be made false records or statements to conceal a scheme where Defendants fraudulently billed the United States Government for medical services purportedly provided to Medicare patients with knowledge of their falsity, or with grossly negligent or reckless disregard to facts and conditions that would indicate that said claims were inaccurate or inappropriate and false.

55. Defendants violated the False Claims Act in order to conceal the fact that the number of procedures being billed to Medicare were not actually performed or were not performed as represented by Defendants.

56. The Defendants, in performing the aforementioned acts, conspired to defraud the United States Government in violation of 31 U.S.C.A. § 3729 (2), (3), and (7).

57. By reason of the violation of 31 U.S.C.A. § 3729 (2), (3), and (7), Defendants have knowingly or recklessly damaged the United States Government in an

amount yet to be determined.

WHEREFORE, the United States demands judgment against Defendants in accordance with the provisions of 31 U.S.C.A. §§ 3729-3733 and for any other costs that the Court deems appropriate of which up to twenty-five percent should be paid to Plaintiff Laura Barrickman as Relator, and any such further relief deemed appropriate.

## COUNT II

**Violation of the False Claims Act, 31 U.S.C.A. § 3729 (2), (3), and (7)**

58. Plaintiff realleges all prior paragraphs of the Complaint as if set forth fully herein.

59. Upon information and belief, Defendants caused to be made false records or statements to conceal a scheme where Defendants fraudulently billed the United States Government for medical services purportedly provided to Medicare patients with knowledge of their falsity, or with grossly negligent or reckless disregard to facts and conditions that would indicate that said claims were inaccurate or inappropriate and false.

60. Defendants violated the False Claims Act in order to conceal the fact that the amount of time billed to Medicare for procedures done was inaccurately reported.

61. The Defendant, in performing the aforementioned acts, conspired to defraud the United States Government in violation of 31 U.S.C.A. § 3729 (2), (3), and (7).

62. By reason of the violation of 31 U.S.C.A. § 3729 (2), (3), and (7), Defendant has knowingly or recklessly damaged the United States Government in an amount yet to be determined.

WHEREFORE, the United States demands judgment against Defendant, in

accordance with the provisions of 31 U.S.C.A. §§ 3729-3733 and for any other costs that the Court deems appropriate of which up to twenty-five percent should be paid to Plaintiff Laura Barrickman as Relator, and any such further relief deemed appropriate.

_____
JERE L. BEASLEY (BEA020)

_____
W. DANIEL "DEE" MILES, III (MIL060)

_____
LARRY A. GOLSTON (GOL029)
Attorneys for Plaintiff

OF COUNSEL:

**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
272 Commerce Street
Post Office Box 4160
Montgomery, Alabama 36103-4160
(334) 269-2343
(334) 954-7555 FAX

## JURY DEMAND

PLAINTIFF HEREBY DEMANDS TRIAL BY JURY ON ALL ISSUES OF THIS CAUSE.

_____
Of Counsel

**FILED IN CAMERA AND UNDER SEAL**

**DO NOT SERVE DEFENDANT**